IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK CAPOZZI                          :
                                       :    CIVIL ACTION
    Plaintiff,                         :
    v.                                 :    NO. 08-cv-1480
                                       :
                                       :
NORTHAMPTON COUNTY, et al.             :
                                       :
    Defendants.                        :
                                       :
                                       :

**OPINION AND ORDER**

**Slomsky, J.**                                        September 3, 2009

    Before the Court are two Motions to Dismiss the Complaint filed by Plaintiff Frank J. Capozzi: one motion filed by Defendants PrimeCare Medical, Inc. ("PrimeCare"), Todd Haskins and Amelia Caputo (jointly "Medical Defendants") (Docket No. 12); and a second motion filed by Defendants Todd Buskirk and Northampton County Department of Corrections (jointly "Prison Defendants") (Docket No. 18). All events relevant to this action occurred while Plaintiff was an inmate at Northhampton Department of Corrections (Northampton DOC). Northhampton DOC employs Defendant PrimeCare to render medical care to inmates. (Am. Compl. ¶ 6.) Defendant Todd Haskins is Director of Healthcare Solutions for Northampton DOC. Id. Defendant Amelia Caputo handles medical grievances as an administrator at the Northampton DOC. Id. Defendant Todd Buskirk is Director of Corrections at Northampton DOC.

    Plaintiff is proceeding *pro se* and did not file a response to the Motion to Dismiss. Nevertheless, the Court will evaluate the allegations set forth in Plaintiff's Complaint. Plaintiff alleges Defendants violated his constitutional rights and that he is entitled to relief under 42 U.S.C. § 1983 because Defendants (1) failed to evaluate for violent tendencies the cellmate who

1

attacked Plaintiff and (2) were negligent in treating Plaintiff's injuries.[1] For the reasons stated below, the Court will grant the Motions to Dismiss filed by the Medical and Prison Defendants.[2]

## I.   STATEMENT OF FACTS[3]

### A.   The Attack and Subsequent Medical Treatment

The facts contained in Plaintiff's complaint are sparse. On February 2, 2006, inmate Karl Kreidler attacked Plaintiff, his cellmate, at Northampton County Department of Corrections ("Northampton DOC"). (Am. Compl. at ¶ 9.) The attack arose from a dispute over Plaintiff's television. Id. Plaintiff sustained injuries to his face as a result of the attack. Id. Dr. Sprague treated Plaintiff's nose, facial bone and eye. Id. at ¶ 6. Plaintiff filed grievances with the Office of the Secretary for Grievances in Harrisburg, Pa. to receive further medical care for his nose.[4] Id. at ¶ 5. Defendant PrimeCare did not provide any additional treatment. Id. Before this incident, prison officials, not identified by Plaintiff, conducted a psychological evaluation of

---

[1] Medical Defendants raise defenses to the claim involving the level of medical care, while Prison Defendants assert defenses to the claim involving failure to take steps to adequately protect Plaintiff. It appears from the face of the Complaint that Plaintiff is asserting both claims against both sets of Defendants. Therefore, the Court's Opinion will apply to both sets of Defendants on both of Plaintiff's claims.

[2] No motion or answer has been filed on behalf of Dr. Sprague, a physician employee of PrimeCare Medical who rendered medical care to Plaintiff after his cellmate attacked him. A summons was issued to Dr. Sprague on April 7, 2009, but it was returned unexecuted on August 5, 2009. (Docket No. 15). Dr. Sprague no longer works for Defendant PrimeCare Medical. Accordingly, the findings in this Opinion do not apply to him. The Court will issue an Order to Show Cause as to why the action against Dr. Sprague should not be dismissed for lack of prosecution.

[3] The facts are taken from the Complaint only and are viewed in the light most favorable to the Plaintiff.

[4] The Complaint does not specify the state agency in which the Office of the Secretary for Grievances is a division. Presumably, it is part of the state prison system.

Kreidler and cleared him for work release. Id. at ¶ 9.

### B. Procedural History

Plaintiff filed his Complaint against the above Defendants on February 5, 2008 in the Middle District of Pennsylvania. On March 18, 2008, the action was transferred to the Eastern District of Pennsylvania.[5] Former Chief Judge James Giles, to whom this case was previously assigned, issued an Order on April 18, 2008 granting Plaintiff's Motion to Proceed In Forma Pauperis and affording Plaintiff thirty days to file an Amended Complaint in compliance with Federal Rules of Civil Procedure 8 and 15. (Docket No. 2.) Plaintiff did not respond to the Order to file an Amended Complaint for almost a year. On February 22, 2009, this Court, to whom this case was transferred, entered an Order to Show Cause as to why the case should not be dismissed. (Docket No. 5.) On March 3, 2009, Plaintiff filed a response to the Show Cause Order stating that he had not received any of the Court's Orders because he had not provided his new address. (Docket No. 6.) The Court found that there was cause to allow Plaintiff to continue the suit (Docket No. 7) and Plaintiff then filed his Amended Complaint (Docket No. 8). Both sets of Defendants filed Motions to Dismiss to which Plaintiff has not responded.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Medical and Prison Defendants have moved to dismiss Plaintiff's Complaint for failure to

---

[5] Prior to the case being transferred to the Eastern District of Pennsylvania, Plaintiff had filed his first Amended Complaint on March 11, 2008, adding Dr. Sprague and Todd Haskins as Defendants. (Docket No. 1.)

state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12 (b)(6). The motion to dismiss standard has undergone recent transformation, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying this principle of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, No. 07-4285, 2009 U.S. App. LEXIS 18626, (3d Cir. Aug. 18, 2009), articulated a two part analysis that District Courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a motion to dismiss. First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaints well-pleaded facts as true, but may disregard any legal conclusions." Id. at *17. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

     In conducting this two step analysis, the Court, in addition to reviewing the Complaint, may also review documents attached to the Complaint and matters of public record. Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d Cir. 2004). The Court may also take judicial notice

4

of a prior judicial opinion. McTernan v. City of York Pennsylvania, No. 07-2670, 2009 U.S. App. LEXIS 18942, at *8 (3d Cir Aug. 24, 2009).

    **B.**    **Failure to Protect**

The Court will first evaluate Plaintiff's § 1983 claim to the extent it alleges Defendants failed to protect Plaintiff from a known risk in violation of his Eighth Amendment rights. The risk that Plaintiff alleges is the risk he faced because his cellmate had a history of violent tendencies.

The Eighth Amendment requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To prove a failure to protect claim asserted under 42 U.S.C. § 1983, an inmate must show:

> (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the official knows or disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Pearson v. Vaughn, 102 F. Supp. 2d 282, 290 (E.D. Pa. 2000) (quoting Farmer, 511 U.S. at 834. Consequently, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997).

First, Plaintiff does not allege in his Complaint any facts to show that he was incarcerated under conditions that posed a substantial risk of harm. See Ogden v. Mifflin County, No. 1:06-CV-2999, 2008 WL 4601931, at *4 (M.D. Pa. Oct. 15 2008) (finding "some palpable threat of actual physical violence is generally required by the case law in order to establish an objectively substantial risk of harm"). Plaintiff does not allege any specific facts that his cellmate had violent tendencies. No facts are alleged that his cellmate made previous threats to him or to any other prisoners. Most importantly, the prison performed an evaluation of Kreidler before

clearing him for work outside of the prison.  Prison officials believed that Kreidler did not pose a substantial risk to the general prison community.  Plaintiff only alleges in a conclusory statement that his cellmate was violent.  This generalization, even if accepted as a well pleaded fact, does not "show" a palpable threat of actual violence which would entitle Plaintiff to relief.  This generalization, therefore, fails to comply with step two of the motion to dismiss analysis under Fowler, supra, which requires a Complaint to show entitlement to relief.

Second, the evaluation of Kreidler by prison authorities before allowing him to work outside of the prison shows that Defendants did not act with deliberate indifference to Plaintiff's safety.  Deliberate indifference exists when "a prison official knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  Circumstantial evidence may prove such subjective knowledge.  Id. at 842; Hamilton, 117 F.3d at 747.  Because prison officials believed that Kreidler was capable of working outside of the prison and re-entering the general prison population, Defendants were not deliberately indifferent to a potential risk that might arise by placing him in a cell with Plaintiff.

Finally, Plaintiff must also allege that each Defendant's actions or inactions caused the substantial risk to reach fruition.  Hamilton, 117 F.3d at 747.  Plaintiff does not allege causation in the Complaint.  In fact, Plaintiff does not allege that any Medical or Prison Defendants knew of Defendant Kreidler's violent history, were directly involved in the evaluation of Kreidler or the decision to allow him re-entry into the general prison population.  See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1998) (holding that prison official must have created or have direct knowledge of substantial risk to be held liable for violation of inmate's constitutional rights).  Moreover, Plaintiff cannot rely on the doctrine of *respondeat superior* or any other theory of vicarious liability to hold Defendants liable.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 824

n. 8 (1985) (noting that respondeat superior does not apply to § 1983 claims).[6]  Consequently, Plaintiff cannot prevail under the failure to protect claim and the Complaint will be dismissed as to both sets of Defendants with prejudice.[7]

### C.  Inadequate Medical Care

---

[6]   While Defendant Northampton DOC cannot be held liable under a respondeat superior theory, it can be held liable under a Monell claim.  To establish such a claim, Plaintiff must show that his injuries were caused by an official municipal policy or custom.  Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)  To establish a municipal policy or custom, Plaintiff must allege a specific pattern or series of incidents that amount to a custom or policy.  Alleging only the incident in which Plaintiff suffered a deprivation will not suffice.  See  Board of Commissioners of Bryant County v. Brown, 520 U.S. 397, 403 (1997).  Here, Plaintiff has not identified any pattern or other specific incident to prove that Defendant Northampton DOC has a policy or custom of inadequately evaluating the violent tendencies of prison inmates. Accordingly, there is no basis for a Monell claim and Defendant Northampton DOC also will be dismissed from the action.

[7]   In addition to arguing failure to state a claim as a ground to dismiss Plaintiff's Complaint, Defendant Buskirk also argues that he is entitled to qualified immunity.  Even if Plaintiff had established facts that his entitlement to relief was plausible, Defendant Buskirk would be protected from suit under qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil suit damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In resolving claims of qualified immunity, a court must decide (1) whether the facts alleged or shown by plaintiff make out a violation of a constitutional right and (2) whether that right was clearly established at the time of the defendant's misconduct.  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (altering decision in Saucier v. Katz, 533 U.S. 194 (2001) and holding that it was appropriate for district court to address second prong of two part test first).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  See Saucier, 533 U.S. at 203.  Here, the decision to assign Plaintiff to a cell with an inmate who was given a psychological evaluation and who was approved for work release does not violate a clearly established constitutional right. Accordingly, Defendant Buskirk is protected from suit under qualified immunity.

Plaintiff also asserts that Defendants are liable under § 1983 because they denied him proper medical care. (Am. Comp. ¶ 9.) The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976). Similar to the failure to protect claim, to succeed on a § 1983 claim for failure to administer proper medical care, Plaintiff must allege facts that show Defendants were (1) deliberately indifferent (2) to a serious medical need. Helling v. McKinney, 509 U.S. 25, 32 (1993). Plaintiff fails to allege facts that Defendants were deliberately indifferent to his serious medical needs.

To prove deliberate indifference Plaintiff must demonstrate that Defendants (1) knew of and disregarded an excessive risk to inmate health or safety or (2) were aware of facts from which the inference could be drawn that a substantial risk of harm existed and that Defendants "drew that inference." Farmer, 511 U.S. at 825. "Deliberate indifference . . . requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff has not established at the motion to dismiss stage that the Prison and Medical Defendants acted with deliberate indifference to his injury.[8] Plaintiff did receive medical attention for his injuries which was administered by a PrimeCare physician. Although Plaintiff claims that Defendant PrimeCare failed to reset his broken nose, he admits that medical staff examined him after the attack by "stitching and repairing [his] damaged nose, facial bone, and

---

[8] Plaintiff also fails to specifically identify any personal involvement or knowledge of any of the named Medical or Prison Defendants in assessing and treating his injuries. As noted in the above analysis regarding the failure to protect claim, direct involvement or personal knowledge is required to succeed on a deliberate indifference claim. See Rode, 845 F.2d at 1208. Accordingly, Plaintiffs' claim that any of the named and served Defendants were deliberately indifferent to his medical needs must be dismissed on this ground as well.

laceration of the eye."[9] (Am. Comp. ¶ 6.) The crux of Plaintiff's argument is that Defendants were deliberately indifferent to his medical needs because he believed the treatment rendered was inadequate. While Plaintiff may be dissatisfied with his medical treatment, it is well established that "an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference." Burton v. Gillis, 2008 WL 443367, *12 (M.D. Pa. Sept. 30, 2008). § 1983 "does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere." Id. At most, Plaintiff's claim amounts to negligence in assessing the seriousness of or in treating Plaintiff's injury. This does not amount to deliberate indifference. Such negligence cannot form the basis for an Eighth Amendment claim.[10] See Brown v. Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Plaintiff, unable to show an entitlement to relief as to the medical treatment portion of his Complaint, has failed to satisfy the "plausibility" prong of Fowler's two step analysis. Consequently, the Motions to Dismiss also will be granted as they pertain to the medical treatment aspects of Plaintiff's Complaint.

Accordingly, Plaintiff fails to adequately allege any claims against either set of Defendants. The Plaintiff has already filed two Amended Complaints in this action. The Court has afforded Plaintiff ample opportunity to present his claims. Based on the allegations Plaintiff has already raised, any further amendments to the Complaint would be futile.[11] See also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility.") Accordingly, the Motion to Dismiss the Medical Defendants is granted in its entirety and the case against them is dismissed with prejudice. An appropriate Order follows.

---

[9] No other information on the medical care Plaintiff received is included in the record.

[10] See Nottingham v. Peoria, 709 F.Supp. 542, 547 (M.D. Pa. 1988) (finding no Eighth Amendment violation where inmate is provided with medical care and there is dispute over adequacy of care); Monmouth County Correction Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (holding disagreement over proper medical treatment does not support Eighth Amendment claim); White v. Napolean, 897 F.2d 103, 108 (3d Cir. 1990) (finding medical negligence alone or any disagreements over the professional judgment of health care provider cannot result in Eighth Amendment violation).

[11] The Third Circuit, unlike other Circuits, does not permit a plaintiff to amend a complaint as a matter of right after a motion to dismiss has been granted. Smith v. NCAA, 139 F.3d 180, 189 (3d Cir. 1998). Rather, a court may grant leave to amend as justice so requires. Id. As indicated above, the Court finds that any amendments would be futile and, therefore, the case is dismissed with prejudice.